**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| **In re**<br>**MANUEL BARROS,**<br><br>　　　　　　　　　　　　　**Debtor**<br><br>**MARCELINO MONTROND,**<br><br>　　　　　　　　　　　　　**Plaintiff**<br>**v.**<br><br>**MANUEL BARROS,**<br><br>　　　　　　　　　　　　　**Defendant** | **Chapter 7**<br>**Case No. 18-11930-FJB**<br><br><br><br>**Adversary Proceeding**<br>**No. 18-1135** |

**CORRECTED MEMORANDUM OF DECISION[1]**

By his complaint in this adversary proceeding, plaintiff and judgment creditor Marcelino Montrond ("Montrond" or the "Plaintiff") objects to the receipt of a discharge by the defendant and chapter 7 debtor, Manuel Barros ("Barros" or the "Debtor"), under 11 U.S.C. § 727(a)(3) and (a)(4)(A) and seeks a determination that a judgment debt owed to him by the Debtor is excepted from discharge by operation of 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6). After a trial, I now enter the following findings of fact and conclusions of law under Fed. R. Civ. P. 52(a)(1), made applicable by Fed. R. Bankr. P. 7052. On the basis thereof, I conclude that the Plaintiff has failed to carry his burden of establishing cause for denial of discharge under § 727(a)(3) and (a)(4)(A) and has failed to carry his burden as to the requirements of nondischargeability under § 523(a)(2)(A), (a)(4), and (a)(6).

On May 24, 2018, the Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code. In the bankruptcy case thereby commenced, the Plaintiff, acting pro se, filed the complaint commencing

---

[1] This memorandum of decision differs from the original only by correction of the case number in the caption.

the present adversary proceeding.  It seeks relief in four counts: (1) nondischargeability under § 523(a)(2)(A); (2) nondischargeability under § 523(a)(4); (3) nondischargeability under § 523(a)(6); and (4) denial of the Debtor's discharge under § 727(a)(3).  The pro se complaint also articulates an objection to the Debtor's discharge under § 727(a)(4)(A) but does not list this objection in a count. Through the joint pretrial statement filed by the parties and discussions at the start of the trial, the parties agreed that the Plaintiff's objection to the Debtor's discharge under § 727(a)(4)(A) would be tried as part of the Plaintiff's case.  I will treat the complaint as having been amended under Fed. R. Civ. P. Rule 15(b)(2), for issues tried by consent, to include a count under § 727(a)(4)(A).  After trial, the parties submitted proposed findings of fact and conclusions of law.

**FINDINGS OF FACT**

At trial the parties together introduced a total of five exhibits and offered the testimony of three witnesses: the Plaintiff, the Debtor, and an accountant named Gilda Andrade. My findings of fact are stated as follows or, where appropriate, included in my analysis.

### The Joint Business

The Plaintiff and the Debtor met and grew up together in Cape Verde.  After each immigrated to the United States, they continued their friendship here.  In May 2006, they began discussing various business opportunities.  On or about May 18, 2006, they entered into a partnership agreement for a business known as Manny Antonio Barros and Marcelino Montrond d/b/a Cape Verde Auto Sales ("CV Auto Sales").  The parties operated a used car dealership at 703 North Main Street, Brockton, Massachusetts (the "Property"). They also agreed to renovate and rent out the four-unit residential property at the same location.

On or about May 19, 2006, the Plaintiff and the Debtor purchased the Property for a total of $520,000.  The seller financed $360,000 of the purchase price and the Plaintiff contributed the remaining $160,000 from a home equity line of credit and his own personal funds.  The parties each

2

made further initial contributions to the business; the Plaintiff contributed more capital and the Debtor contributed vehicle inventory. The business operated for approximately two years until May 2008. From July 2006 through May 2007, the Plaintiff made a series of cash withdrawals from the business account totaling approximately $110,000.  The Plaintiff testified that he used these funds to purchase vehicles at auction and materials for renovating the residential property.  I did not find this testimony credible because the Plaintiff provided no documentary evidence, such as receipts or invoices, to corroborate his testimony. As a result of these cash withdrawals and the Plaintiff's failure to inform the Debtor of them, there were frequent overdrafts of the business account and bounced checks.  To address this problem, the Debtor eventually opened a new account without listing the Plaintiff as a signatory.

During the course of the business's operation, the Debtor and the Plaintiff both used business assets for personal use.  The extent of such personal use by each party is impossible to determine, as the parties' accounting practices were grossly inadequate.

**The State Court Proceedings**

On February 19, 2008, the Plaintiff filed an action against the Debtor in a Massachusetts Superior Court, seeking damages for breach of fiduciary duty, breach of contract, conversion, and breach of the implied covenant of good faith and fair dealing, and further seeking an accounting and injunctive relief.  After and because the Debtor failed to produce documents in pretrial discovery notwithstanding an order compelling him to do so, the court allowed a motion for entry of default judgment against him.  In order to determine the amount of the judgment to enter, the state court judge then commenced an evidentiary hearing on assessment of damages. The damages trial spanned several days, included several witnesses, and during which the court admitted 127 exhibits.  On April 24, 2018, the state court entered its Findings of Fact, Rulings of Law, and Order on Assessment of Damages (the "State Court Order").   The State Court Order determined that the total damages owed to the

Plaintiff were $91,927.89, comprised of 50% of the amount owed on the Plaintiff's home equity line of credit and 50% of the parties' initial contributions offset by the Debtor's vehicle inventory contribution; judgment accordingly entered for Montrond in the amount of $91,927.89. It is this judgment debt as to which Montrond seeks a determination of nondischargeability in this adversary proceeding. The State Court expressly determined that no damages would be awarded for misappropriation of business funds, the conversion count in the complaint, saying Montrond had not proven those damages by a fair preponderance of the evidence.  Other aspects of the State Court Order are detailed below.

**ANALYSIS**

       **Objections to Discharge under § 727(a)**

The Plaintiff has objected to the Debtor's discharge under § 727(a)(3) and (a)(4)(A).  Section 727(a)(3) states: "(a) The court shall grant the debtor a discharge, unless . . . (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."  11 U.S.C. § 727(a)(3). "The purpose of this provision is to ensure that the trustee and creditors receive sufficient information to trace a debtor's financial history for a reasonable period past to present."  *United States v. Trogdon (In re Trogdon)*, 111 B.R. 655, 658 (Bankr. N.D. Ohio 1990) (emphasis added).

The Plaintiff adduced no evidence that the Debtor "destroyed, mutilated, falsified, or failed to keep or preserve any recorded information." Rather, he seems to rely on evidence that the Debtor failed to permit him and Ms. Andrade access to financial records of the business; that is, the Plaintiff alleges that the Debtor concealed evidence of the financial condition of the business.  This count fails for three reasons.  First, § 727(a)(3) is concerned with the financial condition of the debtor, not that of independent entities, such as CV Auto Sales.  The Plaintiff did not offer evidence that they are one and

4

the same. Second, the events complained of, having occurred some ten or more years prior to the Debtor's bankruptcy filing, did not occur within a reasonable time prior to the bankruptcy filing. They are outside of the period of subsection (a)(3)'s concern. And third, in any event, the act complained of is not of a kind that subsection (a)(3) makes cause to deny a discharge: the Debtor is not alleged to have "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information." For these reasons, the acts complained of are not cause for denial of discharge under § 727(a)(3), and this count must be dismissed.

The Plaintiff also alleges three separate bases for denial of discharge under § 727(a)(4)(A). In *Boroff v. Tully*, the First Circuit articulated the following two-part inquiry: "[u]nder § 727(a)(4)(A), the debtor can be refused his discharge only if he (i) knowingly and fraudulently made a false oath (ii) relating to a material fact." *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987). Breaking the first element down into its components, the entire inquiry may be restated as whether (i) the debtor made an oath (ii) that was false and (iii) related to a material fact in the case (iv) knowingly and (v) fraudulently. See *Commonwealth of Massachusetts v. Bartel (In re Bartel)*, 2009 WL 2461727 at *5 (Bankr. D. Mass. 2009).

The Plaintiff first contends that the Debtor knowingly and fraudulently made a false oath in the schedules he filed in connection with this bankruptcy case by falsely describing the Plaintiff's claim on his Schedule E/F, the schedule of creditors holding unsecured claims, as being in the amount of $93,000, when in fact its amount, with accrued interest, was, by the date of the bankruptcy petition, much greater. The Plaintiff has not carried his burden of proving that this statement was made, that (if made) it was false, or, if made and false, that the Debtor made it with fraudulent intent. First, the allegedly errant schedule was not introduced into evidence, so the alleged statement under oath is not proven.[2] Second, the judgment itself is not in evidence, so its date and the components of the judgment other

---

[2] A court may take judicial notice of filings in this bankruptcy case, but I have not been asked to do so here.

than its principal amount are not in evidence; and no calculation of the amount that was due on the date of the bankruptcy filing has been adduced. For these reasons, it is impossible to find that the alleged statement was false.  Third, the evidence does not establish fraudulent intent in the making of the alleged statement. There is no evidence that the Debtor had anything to gain by understating the amount of this judgment or that, in his quantification of the debt, he might otherwise have been motivated by a desire inconsistent with his obligations in this case.

The Plaintiff next contends that the Debtor knowingly and fraudulently made a further false oath in the schedules he filed in connection with this bankruptcy case by falsely describing the Plaintiff's claim on his Schedule E/F as belonging to Plaintiff's attorney, Natasha Lucien, who did not represent the Plaintiff in the state court action (but does represent him in this proceeding). The Plaintiff argues that I can infer from the schedule alone that the Debtor listed the claim with the intention of depriving the Plaintiff of proper notice of the bankruptcy case.  Again, this alleged statement under oath is not proven because Schedule E/F was not introduced into evidence. Fraudulent intent is also not proven. Though the claim should have been listed under the Plaintiff's name and address, notice of the bankruptcy filing to his counsel is hardly an effective way to prevent notice from getting to the Plaintiff. I do not find that fraudulent intent has been proven as to this alleged false listing.

The Plaintiff's third argument under § 727(a)(4)(A) is that the Debtor made a false oath on Schedule I, the Debtor's schedule of income, by failing to disclose a second business, Tony Auto Sales, Inc., for which he worked or in which he held an ownership interest. Again, this alleged statement under oath has not been proven as the Debtor's Schedule I has not been introduced into evidence.  In any event, I find that the alleged omission was not untrue. The Debtor would have been obligated to disclose his income from Tony Auto Sales, and the source of that income, only if he had income from that source at the time of his bankruptcy filing, on May 24, 2018.  The Debtor testified that Tony Auto Sales, Inc. is owned by his daughter, that she filed paperwork with the Secretary of the Commonwealth

in July 2019, that the Debtor was identified as the president, that business began operating only in January 2020, and that the Debtor was removed as president in February 2020. The Plaintiff has adduced no evidence that the Debtor had income from Tony Auto Sales in or before May 2018. Accordingly, I further find that Plaintiff has failed to prove that the alleged omission amounted to a falsehood. For the reasons stated, the Plaintiff's counts for denial of discharge under § 727(a) will be dismissed.

**Nondischargeability under § 523(a)(2)(A), (a)(4), and (a)(6)**

The Plaintiff seeks a determination that the judgment debt owed to him by the Debtor is excepted from discharge under § 523(a)(2)(A), (a)(4), and (a)(6). I address these claims in order.

Under § 523(a)(2)(A), a "discharge under . . . this title does not discharge an individual debtor from any debt — for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). It is unclear whether the Plaintiff is relying on false pretenses, a false representation, or actual fraud in making this claim; and the substance of the alleged false pretense, false representation, or fraud has not been articulated, even now, with particularity. It is not the court's duty to guess at how the Plaintiff is building his case, and I can hardly expect the Debtor to have addressed a claim that the Plaintiff has not fully articulated. In any event, very little evidence was introduced regarding the parties' relationship and the Debtor's actions prior to the formation of the partnership. None of the evidence shows any indication that the Plaintiff entered into the partnership agreement based on false pretenses, false representations, or actual fraud. In the Plaintiff's proposed findings of fact, he failed to identify a single fact in support of his assertion under subsection (a)(2)(A). He pointed to no false pretense, false representation, or fraud in support of that claim. Indeed, no evidence of any of the foregoing was

Case 18-01135    Doc 94    Filed 10/07/21    Entered 10/07/21 11:05:16    Desc Main
Document    Page 8 of 11

introduced at the trial. The Plaintiff has completely failed to meet his burden on this count. For these reasons, this count will be dismissed.

Subsection 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The Plaintiff appears to be making an argument for defalcation while acting in a fiduciary capacity and embezzlement based on the Debtor's alleged conversion of thousands of dollars from the business accounts for personal use. The Plaintiff points to the findings from the state court action as evidence of the Debtor's conversion. Counsel to the Plaintiff asserts in her proposed findings of fact and conclusions of law that the State Court Order, which was admitted into evidence by agreement of both parties, "found the Defendant/Debtor guilty of all counts and awarded Plaintiff . . . for (sic) damages . . . [including] that the Defendant had converted the property, money and business of the partnership to his own use and benefit."

This argument is disingenuous. The state court judge concluded after several days of trial, during which many witnesses testified and well over one-hundred exhibits were admitted, that "[u]nder the circumstances, both partners took funds for personal use without regard to the need for a proper accounting." The state judge also concluded that "[t]o the extent both partners took funds for their personal needs, [Defendant] should not be penalized simply because he left a paper trail (in the form of checks drawn on the Citizens Bank account) instead of making cash withdrawals as [the Plaintiff] repeatedly did." The state court judge found that the Debtor had appropriated business funds for his personal use, but also that the Plaintiff had done the same, and that the record evidence left the court "unable to apportion cash disbursements as between the two principals." Further, the state court judge expressly "[did] not credit the testimony of either party regarding which of them took more than the other." The judge concluded: "Consequently, the Court cannot assess a damage amount for lost profits or misappropriation of business funds, concluding that the plaintiff has not proven those damages by a fair preponderance of the evidence." Accordingly, although the state court record justified a finding that

the Debtor had misappropriated business funds for his own use, it is clear that the damages awarded in that action included no damages for misappropriation or conversion of business funds or assets.

The Plaintiff seeks a determination of dischargeability as to the state court judgment debt and that debt only. But no portion of that judgment debt consists of damages for misappropriation or conversion of funds of the parties' business. It follows that no portion of the judgment is excepted from discharge under § 523(a)(4) as a debt for defalcation while acting in a fiduciary capacity or embezzlement.[3]

The Plaintiff also directs the court to the testimony from Ms. Andrade, the Plaintiff's accountant. He alleges that her testimony establishes that the Defendant's withdrawals of business funds constituted "conversion" and "misuse" of company assets. This does not rescue the Plaintiff's case under § 523(a)(4). First, the state court judge found Ms. Andrade's testimony to be "grossly inaccurate" and "flawed and unreliable," causing him to disregard her testimony. I generally agree with that assessment as to her testimony in the present action. The accounting she testified to in this proceeding allows no better findings than the state court was able to make as to the parties' respective misappropriations. Second, the state court judgment included no liability for misappropriation of business assets. Even if Ms. Andrade's testimony were successful in establishing that the Debtor had misappropriated business funds in a definite and quantifiable amount, and that the Plaintiff has misappropriated a quantified and much lesser amount, it would remain the case that the state judgment, the debt at issue here, includes no liability for misappropriation of business funds.

Section 523(a)(6) excepts from discharge any debt for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Judge Somma summarized the requirements of this exception:

---

[3] "Defalcation" may include wrongs other than misappropriation of funds, but the Plaintiff alleges no defalcation other than misappropriation of funds from the parties' business.

> The Plaintiff must show that the Debtor injured her or her property and that the injury was both "willful" and "malicious." "Willfulness" requires a showing of intent to injure or at least of intent to do an act which the debtor is substantially certain will lead to the injury in question. *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). "Malicious" requires the injury to have been "wrongful," "without just cause or excuse," and "committed in conscious disregard of one's duties." *Printy v. Dean Witter Reynolds, Inc.*, 110 F.3d 853, 859 (1st Cir.1997). Malice thus has both objective and subjective elements: the injury must have been objectively wrongful or lacking in just cause or excuse; and the debtor must have inflicted the injury in "conscious disregard" of her duties, meaning that she has to have been aware that the act was wrongful or lacking in just cause or excuse.

*Burke v. Neronha (In re Neronha)*, 344 B.R. 229, 231-32 (Bankr. D. Mass. 2006). The Plaintiff argues that he was willfully and maliciously injured twice: first when the Debtor removed his name as a signatory on the business checking account; and again when the Debtor refused to allow the Plaintiff's accountant, Ms. Andrade, access to the business records of CV Auto Sales. The evidence at trial supported a very different conclusion.

As to removing the Plaintiff from the checking account, the Plaintiff was making cash withdrawals from the business account without informing the Debtor or providing receipts to him. The state court judge found that the Plaintiff had withdrawn over $80,000 in cash without explanation, had used business funds to pay his employees in a cleaning business, had paid his personal mortgage with company funds, and paid his divorce lawyer with business funds. The Defendant supported these findings in this case with an accounting, admitted in evidence, that showed over $110,000 in cash withdrawals by the Plaintiff. As a result, the Debtor was writing checks that were being returned for insufficient funds. The only evidence adduced as to the Debtor's intent in removing the Plaintiff as a signatory was that the Debtor intended to remedy this issue, not to prevent the Plaintiff from accessing funds entirely. The Plaintiff also did not introduce any evidence to show the removal of his name as a signatory on the account caused him injury or damages. Finally, to be malicious, an act must be done without just cause or excuse. When the Defendant removed the Plaintiff from the bank account he did

10

so *with* just cause, namely to ensure that the business checks written on the CV Auto Sales account were honored. In addition, no part of the state court judgment, which is the debt in issue, consists of damages for injury caused by the Debtor's removal of the Plaintiff as a signatory on the business's account.

The Plaintiff failed to support his argument that the Defendant's refusal to allow Ms. Andrade access to the business records of CV Auto Sales caused him injury that was willful and malicious within the meaning of § 523(a)(6).  The Defendant testified, and I find his testimony credible, that he provided the Plaintiff and Ms. Andrade with the books and records of the business and that they took the records off-site to review the records. Indeed, Ms. Andrade testified in this court as well as in the state court with the aid of records and information belonging to the business.  In any event, the Plaintiff failed to establish that, even if the Defendant did refuse Ms. Andrade access to company records, that he did so with intent to injure the Plaintiff, or that the refusal was substantially certain to result in injury, or that the Plaintiff was in fact injured by this refusal, much less in any definite sum. In addition, no part of the state court judgment, which is the debt in issue, consists of damages for injury caused by the Debtor's alleged denial of access to the company's records.

For these reasons, the count seeking relief under § 523(a)(6) will be dismissed.

**CONCLUSION**

For the reasons set forth above, I conclude that the Plaintiff has failed to carry his burden of establishing cause for denial of discharge under § 727(a)(3) and (a)(4)(A) and has failed to establish the requirements of nondischargeability under § 523(a)(2), (a)(4), and (a)(6) as to any portion of the judgment debt. A separate judgment of dismissal shall enter accordingly.

Date:  October 7, 2021

_____
Frank J. Bailey
United States Bankruptcy Judge